UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. MURPHY,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL BERNIER, et al.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)  23-11657-FDS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON
<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

**SAYLOR, C.J.**

  This case involves the allegedly improper restriction of a family member's ability to visit an incarcerated prisoner. Plaintiff James M. Murphy, proceeding *pro se*, contends that he was wrongfully denied entry to the Federal Medical Center in Devens, Massachusetts, to visit his father. The complaint asserts claims against the Bureau of Prisons and an FMC Devens staff member under various federal statutes and the United States Constitution. It also asserts a negligence claim against the United Parcel Service ("UPS"). Defendants have moved to dismiss the complaint under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failing to state a claim upon which relief can be granted. For the following reasons, those motions will be granted.

**I.  <u>Background</u>**

  Unless otherwise noted, the following facts are drawn from the amended complaint and other filings concerning defendants' motions to dismiss.[1]

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity;

A. **Factual Background**

In January 1995, James M. Murphy Jr. was sentenced in the District of Massachusetts to an aggregate term of 441 months of incarceration for various crimes, including fraud, bank robbery, and conspiracy. *United States v. Murphy*, No. 91-10039-5, ECF No. 617 (D. Mass. Jan. 27, 1991).[2] In July 2021, he was transferred from the Federal Correctional Institution in Fairton, New Jersey, to the Federal Medical Center in Devens, Massachusetts. (Compl. ¶ 8). According to the complaint, to facilitate his transfer, he gave his property to a BOP employee for transport. (*Id.*). That property did not contain any contraband. (*Id.*).

The property was apparently transferred by UPS. (*Id.* ¶ 6). Upon arrival at FMC Devens, however, he was informed that several contraband items were found among his possessions. (*Id.* ¶ 12). He also discovered that an MP3 player had been removed. (*Id.*).

Because of the detected contraband, Murphy was placed in the Segregation Housing Unit ("SHU") and temporarily prohibited from receiving visitors. (*Id.* ¶ 11). He challenged that restriction through the BOP's administrative remedy process, alleging that the contraband items had been introduced to his possessions by BOP employees. (*Id.* ¶ 14; Def. Ex. M at 2). After an investigation, the BOP determined that the contraband had likely accidentally been introduced to Murphy's belongings by a UPS employee in transit from FCI Fairton. (Def. Ex. C at 4).

Plaintiff James M. Murphy is Murphy's son. Plaintiff and his sister were initially approved to visit Murphy upon his transfer to FMC Devens. (*Id.* ¶ 10). The day before that visit, however, a BOP employee informed him that Murphy could not receive visitors because he

---

(2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[2] That sentence was later reduced due to a subsequent change in the law. *See United States v. Murphy*, No. 91-10039, ECF No. 751 (D. Mass. May 3, 2023).

2

had been placed in the SHU.  (*Id.* ¶ 11).  After the BOP investigation, Murphy was released from the SHU on September 17, 2021.  (Def. Ex. B at 1).  Plaintiff subsequently visited Murphy twelve times between September 2021 and August 2022.  (Def. Ex. F).

On August 4, 2022, plaintiff attended an approved visit at FMC Devens.  (Compl. ¶¶ 15-23).  On the same day, after the visit, Murphy informed plaintiff that Lieutenant Michael Bernier (a BOP officer) had notified him that plaintiff's visitation privileges were suspended.  (*Id.* ¶ 24).  Plaintiff received no hearing or written notice before the suspension took effect.  (*Id.* ¶¶ 25-27).  Plaintiff's visitation privileges were reinstated by October 7, 2022.  (*Id.* ¶ 33).

Murphy was released from BOP custody on August 4, 2023.

**B.** **Procedural Background**

On September 6, 2022, plaintiff filed an administrative claim under the FTCA challenging his inability to visit Murphy while he was assigned to the SHU in August 2021.  (*Id.* ¶ 30; ECF No. 25-2).  That claim was denied on November 2, 2022.  (ECF No. 25-3 at 1).

Plaintiff filed the initial complaint on July 25, 2023.  The complaint was amended on March 15, 2024.  The amended complaint asserts six counts against Bernier, the BOP, and UPS.  It alleges that defendants violated plaintiff's statutory and constitutional rights by failing to provide a hearing or written notice of the visitation suspension in August 2022 (Counts 1-3); failing to respond to a letter concerning the suspension (Count 4); deprived plaintiff of his right to associate with his family without due process (Count 5); and negligently allowing contraband to be mixed with Murphy's belongings (Count 6).  It seeks a declaration that defendants deprived plaintiff of "his rights and privileges" under federal law and the U.S. Constitution; a declaration that BOP or UPS employees acted negligently; and damages of $9,000 for plaintiff's administrative claim.  (Compl. at 9).

Defendants have moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) for

lack of subject-matter jurisdiction and failing to state a claim upon which relief can be granted.

**II.     Standard of Review**

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).  If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted.  *Id.*  When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).  Similarly, on a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.     Analysis**

In essence, the complaint appears to seek two forms of relief: (1) a declaratory judgment as to the constitutionality of the BOP's visitation policies and the procedures by which those privileges are revoked, and (2) tort damages for defendants' alleged negligence during Murphy's transfer to FMC Devens. Because this court cannot grant either form of relief under the circumstances pleaded in the complaint, the motions to dismiss will be granted.

**A.     Claims for Declaratory Relief**

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *American Civ. Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *D.H.L. Assocs. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." *Gulf of Maine Fisherman's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002).

In the context of challenges to prison policies, the First Circuit has held:

> Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted.

*Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007)); *see also Snell v. Neville*, 998 F.3d 474, 485 (1st Cir. 2021) ("An inmate generally loses the right to challenge prison conditions or policies at a particular facility when he

5

transfers or leaves that prison because his complaints would no longer have any substantial impact on his life."). The sole exception to that rule is if an inmate can show that the challenged policies are "capable of repetition, yet evading review." *Ford*, 768 F.3d at 30. "The exception applies where: (1) the challenged action did not last long enough for the parties to litigate the harm before it ended; and (2) there is a reasonable expectation that the complaining party will endure the same allegedly harmful action at some point in the future." *Snell*, 998 F.3d at 485.

Here, the claims for declaratory relief are doubly moot—both because plaintiff's visitation privileges were restored by October 2022, long before this lawsuit was filed, and because Murphy has already been released from custody. *See Towle v. New Hampshire Dep't of Corr.*, 2008 WL 2080782, at *4 (D.N.H. May 14, 2008) (challenge to visitor ban was moot after visitor resumed making monthly visits); *Brottman v. Goins-Johnson*, 2020 WL 2467258, at *4 (D. Md. May 13, 2020) (case moot upon restoration of visitation privileges). Particularly in light of Murphy's release, the complaint does not allege that plaintiff has any expectation of being faced with any similar circumstances at any time in the future, and thus there is no basis on which to conclude that any of the alleged harms are "capable of repetition, yet avoiding review." *See Snell*, 998 F.3d at 485.

Accordingly, because the claims for declaratory relief are moot, they will be dismissed for lack of subject-matter jurisdiction.[3]

### B.     Claim for Damages

Although the complaint is unclear, it appears to seek damages stemming from the allegedly negligent treatment of Murphy's property during his transfer, which led to the

---

[3] Although the complaint also requests costs and attorney's fees, "[a] litigant's interest in a possible award of attorneys' fees is not enough to create a justiciable case or controversy if none exists on the merits of the underlying claim." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 51 (1st Cir. 2006).

6

temporary suspension of his visitation privileges. Defendants point to numerous potential deficiencies in the complaint, any one of which might warrant dismissal. The most fundamental flaw, however, is that the complaint does not allege that plaintiff himself has a cognizable interest in the property in question sufficient to establish standing.

Article III limits the jurisdiction of the federal courts to actual cases or controversies. U.S. CONST. art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Accordingly, a plaintiff in federal court must "establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The standing doctrine serves to identify those disputes that are "appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560 (quotations and citations omitted).

Standing has both a constitutional and a prudential component. Constitutional standing requires proof of three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (quotations and citations omitted).

Prudential standing "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove*, 542 U.S. at 12 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Parties generally cannot assert another person's legal rights unless the litigant (1) has suffered an injury in fact; (2) has a close relationship to the third

party; and (3) there "exists some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio,* 499 U.S. 400, 411 (1991); *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 106 (1st Cir. 1995). "[T]o satisfy [the third] criterion, a party must show that some barrier or practical obstacle (*e.g.*, third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest." *Benjamin*, 57 F.3d at 106.

Here, the complaint fails to allege sufficient facts to establish plaintiff's standing to pursue a claim for the mishandling of his father's property. As an initial matter, the purported damage or loss to the property in question is plainly alleged to have been inflicted on Murphy's property, not plaintiff's property. Moreover, even assuming that plaintiff was in some sense harmed by defendants' alleged negligence, the complaint contains no facts to indicate that there is "some hindrance" to Murphy asserting his own interests that could confer plaintiff third-party standing for plaintiff to assert claims arising out of the mishandling of Murphy's property.

Accordingly, because plaintiff lacks standing to assert the claim for damages, that claim will be dismissed for lack of subject-matter jurisdiction.

## IV.  Conclusion

For the foregoing reasons, defendants' motions to dismiss are GRANTED. The Clerk is directed to enter a separate order of dismissal.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  May 31, 2024